***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, except for some modifications, the Full Commission MODIFIES AND AFFIRMS the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between plaintiff and defendant-employer on all relevant dates herein.
3. Continental Casualty Company is the carrier on the risk for workers' compensation purposes.
4. Plaintiff's average weekly wage on both 17 August 1998 and 16 February 1999 was $744.72. This yields an applicable compensation rate of $496.50.
5. Plaintiff contends that he sustained injuries to his back on 17 August 1998 (the subject of I.C. No. 866245) and again on 16 February 1999 (the subject of I.C. No. 919042). By order filed on 24 August 2000, the Executive Secretary consolidated these two cases for hearing purposes.
6. Plaintiff worked for defendant-employer and was paid his regular wages for the following periods of time: 17 August 1998 through 2 October 1998, and 1 February 1999 through 16 February 1999.
7. Plaintiff received short-term disability benefits in the weekly amount of $481.70 for the period of time from 15 October 1998 through 31 January 1999, for a total amount of $7,500.76. Plaintiff received a second period of short-term disability benefits at the same weekly rate for a total of $14,313.37 from 3 March 1999 through 26 September 1999.
8. This claim was the subject of a mediation on 27 November 2000, after which defendants paid in full the mediator's fee of $675.00 to mediator Neill S. Fuleihan.
9. In addition to the deposition testimony and the exhibits attached to the transcripts of the depositions, the parties stipulated into evidence a 7 March 2001 letter from the human resources manager of defendant-employer to counsel, and 101 pages of medical records. Plaintiff's exhibits 1 through 10, and defendants' exhibits 1 through 6 were also received into evidence at the Deputy Commissioner hearing.
10. The issues to be determined by the Commission are whether plaintiff sustained compensable injuries by accident on 17 August 1998 and/or 16 February 1999, and, if so, to what benefits is he entitled. Defendants allege that if plaintiff's claim or claims are found to be compensable, that defendants are entitled to a credit or offset for short-term disability benefits paid to plaintiff and/or for paying the full mediator's fee.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner with some modifications and finds as follows:
 FINDINGS OF FACT
1. On the date of the hearing before the Deputy Commissioner, plaintiff was 33 years old and resided in Georgia. Plaintiff has a high school diploma and in early 2000 he earned a residential appraiser's certificate after going to a real estate appraisal school. Plaintiff was working full-time for North Georgia Appraisal Service at the time of the Deputy Commissioner hearing.
2. Plaintiff worked for defendant-employer for eleven and a half years and initially was hired in May 1987. Plaintiff's job was to deliver soft drinks. As part of this delivery job, plaintiff drove a tractor trailer. This was a physically strenuous job in that plaintiff also had to lift and move the crates of drinks off the truck, place the crates on buggies, and then push the buggies into the stores, and stock the shelves with the drinks. Plaintiff's job required lifting of 20 to 70 pounds. Plaintiff worked 11-12 hours per day delivering 500-700 cases of drinks per day.
3. Defendant-employer required regular physical examinations for its delivery employees. Plaintiff's physical examination reports of 4 June 1996 and 9 June 1998 revealed no health concerns, problems with his back or other part of his body. For six months to a year preceding August 1998, plaintiff experienced intensifying back pain. Plaintiff attributed the development of this back pain to his job. Despite his increasing pain, plaintiff missed no work due to back pain prior to August 1998.
4. On 17 August 1998 plaintiff was doing his normal job duties of lifting and loading cases of drinks onto a buggy. As plaintiff lifted a case of drinks and turned to place them on the buggy, he felt an unusual, painful pop in his middle back. Plaintiff reported the incident that same day to his supervisor and completed an accident report.
5. Plaintiff went to a family physician, Dr. Steven S. Crider, on 17 August 1998, where he reported a one-year history of back pain that gradually increased in intensity and significantly worsened over the past six months. The pain was worse at night and on weekends when plaintiff was not working and was worse when he bent over. Dr. Crider's notes indicate that plaintiff continued working but that the pain was very distracting at night after he got home from work. Dr. Crider's notes also indicate that this was a chronic as opposed to an acute problem, but the medical notes corroborate that plaintiff's back pain increased on 17 August 1998 while he was working. Plaintiff treated with this family practice for several months, including having x-rays done and obtaining prescriptions for medication and physical therapy. The physical therapy notes confirm plaintiff's increase in symptoms following an incident of lifting drinks at work on 17 August 1998.
6. An MRI done on 5 September 1998 revealed mild disc bulging at T7-8 and T8-9 with associated bone spur formation at those levels.
7. Plaintiff next went to see Dr. Michael J. Kordus on 1 October 1998 for continuing complaints of back pain. Dr. Kordus took plaintiff out of work and prescribed anti-inflammatory medication and possible epidural injections.
8. Plaintiff saw Dr. Mark H. Moriarty at Peachtree Orthopaedic Clinic on 19 October 1998, who recommended a bone scan. Like Dr. Kordus, Dr. Moriarty also took plaintiff out of work and referred plaintiff to Dr. James Hoski. Plaintiff went out of work as of 2 October 1998.
9. Plaintiff began treating with Dr. Hoski on 17 December 1998. Dr. Hoski noted that plaintiff developed back pain over the course of his employment, with an increase in his symptoms when he felt a pop in his back while lifting at work in August. Dr. Hoski interpreted the MRI to read that plaintiff has Schmorl's nodes in the thoracic region, which is a preexisting, developmental abnormality. Herniated discs are often associated with Schmorl's nodes, and this developmental abnormality is the probable explanation for plaintiff's small herniated discs.
10. Dr. Hoski took plaintiff out of work from 17 December 1998 through 1 February 1999. In addition, at his first evaluation of plaintiff, Dr. Hoski discussed the nature of plaintiff's developmental condition, particularly plaintiff's progressive complaints of pain, and recommended that plaintiff pursue a different job that did not require the heavy physical demands of his current job with defendant-employer.
11. Plaintiff's injury by accident of 17 August 1998 materially exacerbated his preexisting, underlying medical condition, and this injury by accident and material exacerbation rendered him unable to work in any capacity from 2 October 1998 through 31 January 1999. Plaintiff received short-term disability benefits during this period of time that he was out of work.
12. Plaintiff returned to work for defendant-employer on or about 1 February 1999 in his regular duty job. On 16 February 1999, while working, plaintiff opened the door of his truck, and he discovered that some of the cases of three liter drinks had shifted in transit and settled against the door of the truck. Plaintiff tried to rearrange the drinks and, in the process, stepped on some of the drinks that he had placed on the ground, which caused him to slip and fall. Plaintiff fell to the ground and some of the drinks that he had been holding landed on him.
13. Plaintiff reported this incident to his supervisor and filled out an accident report several days later. Plaintiff reported to Angel Medical Center in Franklin on 16 February 1999, at which time he was given medication and taken out of work for two days.
14. On 21 February 1999 plaintiff returned to Dr. Kordus, who noted that plaintiff was complaining of increased symptoms following the incident on 16 February 1999. However, significantly, Dr. Kordus noted that plaintiff's affect did not comport with his complaints of pain, and that plaintiff appeared to "likely [have a] secondary gain component" with regard to his complaints. Nevertheless, despite his reservations about plaintiff's condition, Dr. Kordus took plaintiff out of work until plaintiff could see Dr. Hoski.
15. Plaintiff returned to Dr. Hoski on 3 March 1999. At this examination, plaintiff had no neurologic deficits. The physical examination was within normal limits and plaintiff's condition was unchanged from prior to the 16 February 1999 incident. Despite the lack of increased symptoms from the previous examination of 27 January 1999, and based on plaintiff's underlying, preexisting condition as opposed to the injury or injuries by accident, Dr. Hoski assigned permanent work restrictions of medium duty work which included occasional lifting of 50 pounds, frequent lifting of 25 pounds and constant lifting of 10 pounds.
16. Plaintiff did not return to work for defendant-employer after 16 February 1999, as no medium-duty job existed with defendant-employer. Plaintiff was unable to return to work as a route salesman for defendant-employer. Plaintiff received an additional period of short-term disability benefits. Plaintiff did five to seven jobs involving grading work on his own using a bulldozer, but he was not physically able to continue performing the grading jobs. In February 2000 plaintiff attended classes at a real estate appraisal school and earned a residential appraiser certificate. Beginning May 2000 plaintiff worked full time for Priority Appraisal earning less wages than his pre-injury average weekly wage. In February 2001 plaintiff began working for North Georgia Appraisal Service also at reduced wages.
17. Plaintiff was at maximum medical improvement as of 3 March 1999. Plaintiff has a 10% permanent partial impairment to his back as a result of the injury by accident of 17 August 1998 that aggravated his underlying medical condition.
18. At his deposition Dr. Hoski was presented with the medical notes from Dr. Crider and his associate Dr. Korkeila of 17 and 18 August 1998 that described plaintiff's escalating midback pain over the course of a year prior to the injury by accident on 17 August 1998. Based upon the history shown in these medical notes, Dr. Hoski appeared to revise his opinion concerning the 17 August 1998 aggravation of plaintiff's preexisting condition. Dr. Hoski stated that the accident on 17 August 1998 aggravated plaintiff's symptoms and made his pain worse, but that plaintiff had no permanent work restrictions as a result of the accident on 17 August 1998. Plaintiff has a progressive disorder that reached a point where the disorder was causing enough pain that he was unable to perform his regular job as a delivery person. Dr. Hoski would have assigned the same work restrictions to plaintiff, given his objective complaints of pain, regardless of any injury or injuries by accident and based upon plaintiff's preexisting, underlying medical condition.
19. Given the totality of the medical evidence in this matter, particularly the note of Dr. Kordus dated 21 February 1999 and Dr. Hoski's deposition testimony, the Commission finds that plaintiff's complaints of reduced capacity or inability to work after 3 March 1999 due to the incidents on 17 August 1998 and/or 16 February 1999 are not deemed credible. In addition, the greater weight of the medical evidence fails to show that plaintiff's diminished capacity to earn wages is causally related to the compensable injuries by accident. Plaintiff's inability to work, if any, after 3 March 1999 is directly attributable instead to plaintiff's underlying, preexisting medical condition.
20. In January 2000 Dr. Hoski reiterated that surgery was not a viable option for plaintiff and recommended that plaintiff complete a comprehensive multi-disciplinary functional restoration pain management/work hardening program. While in the program, plaintiff received treatment from Dr. Terence Fitzgerald, a clinical psychologist. According to Dr. Fitzgerald, plaintiff suffered from depression and the initial aggravating event was a chronic pain condition, the maintaining event was the pain and concerns about work disruption, and the exacerbating effects were familial stressors (estrangement and separation from his wife) and financial stressors. Dr. Fitzgerald went on to state that "[i]f you're asking me to partition it out, I can't."
20. After his release from the pain management program in February 2000, plaintiff also was treated for his depression by Dr. George Johnson, a psychiatrist. Dr. Johnson stated that plaintiff's back pain was in part related to his depression and that as his depression got better, plaintiff's back pain also improved. At the time plaintiff was treated by Dr. Johnson, the primary focus of plaintiff's stress was his marital situation and his separation from his wife. However, Dr. Johnson stated that the depression was aggravated by the accident at work on 17 August 1998 and/or 16 February 1999.
21. The greater weight of the medical evidence shows that plaintiff's depression was causally related to the compensable injury by accident of 17 August 1998 and the temporary flareup caused by the injury by accident on 16 February 1999. As of August 2000 plaintiff's depression resolved.
 ***********
Based upon the findings of fact and conclusions of law, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident as a result of a specific traumatic incident at work on 17 August 1998 when he lifted a case of drinks. N.C. Gen. Stat. § 97-2(6). Plaintiff had an underlying preexisting medical condition that was aggravated by this injury by accident on 17 August 1998.
2. As a result of his compensable injury by accident on 17 August 1998, plaintiff was temporarily totally disabled from 2 October 1998 through 31 January 1999. N.C. Gen. Stat. § 97-29.
3. Plaintiff sustained a compensable injury by accident arising out of and in the course of his employment on 16 February 1999. N.C. Gen. Stat. § 97-2(6). This injury by accident briefly exacerbated plaintiff's underlying medical condition and injury by accident of 17 August 1998.
4. As a result of his compensable injury by accident of 16 February 1999, plaintiff was temporarily totally disabled from 16 February 1999 through 3 March 1999. N.C. Gen. Stat. § 97-29.
5. "Disability" is defined in the Act as a claimant's inability to earn his/her preinjury wages due to a compensable injury by accident. N.C. Gen. Stat. § 97-2(9). Plaintiff has not met his burden of proving by the greater weight that any reduced capacity or incapacity to earn wages after 3 March 1999 was related to his compensable injury or injuries by accident.
6. Plaintiff had no change in his underlying medical condition after 16 February 1999. Plaintiff was at maximum medical improvement as of 3 March 1999. Plaintiff retained a 10% permanent partial impairment to his back as a result of the injury by accident of 17 August 1998. N.C. Gen. Stat. § 97-31(23).
7. Plaintiff is entitled to have defendants pay for medical treatment that was reasonably necessary to effect a cure, give relief, or lessen the period of his disability due to his compensable injuries by accident. N.C. Gen. Stat. §§ 97-2(19) and 97-25. The approved medical expenses include treatment of plaintiff's depression by Dr. Fitzgerald and Dr. Johnson.
8. Defendants are entitled to be reimbursed by plaintiff for half of the mediator's fee. Industrial Commission Mediated Settlement Conferences Rule 7(c).
9. Defendants are entitled to a credit for the short-term disability benefits received by plaintiff for the period of 15 October 1998 through 31 January 1999. N.C. Gen. Stat. § 97-42.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to the attorney's fee and credits for the mediator's fee and the short-term disability benefits approved below, defendants shall pay to plaintiff temporary total disability compensation at the weekly rate of $496.50 from 2 October 1998 through 31 January 1999, and from 16 February 1999 through 3 March 1999. Said compensation has accrued and shall be paid in a lump sum.
2. Subject to the attorney's fee and credits for the mediator's fee and the short-term disability benefits approved below, defendants shall pay to plaintiff permanent partial disability benefits for 30 weeks at the weekly rate of $496.50 to compensate him for his 10% permanent partial impairment rating to his back.
3. Plaintiff's counsel is entitled to a reasonable attorney's fee of 25% of the amount awarded to plaintiff in Paragraphs 1 and 2 of this Award after defendants take the credits owed them. Defendants shall deduct one-fourth of the total amount of compensation owed plaintiff and forward that amount directly to plaintiff's counsel.
4. Defendants shall pay for all related medical compensation that is or was reasonably necessary to effect a cure, give relief, or lessen the period of plaintiff's disability including treatment provided by Dr. Johnson and Dr. Fitzgerald.
5. Defendants shall bear the costs of this proceeding.
This the ___ day of July 2002.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/______________ RENE C. RIGGSBEE COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER